CURTIS W. KINGBAY AND LAURA M. KINGBAY, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 469–64.   Filed April 29, 1966.

*Paul W. Oberg,* for the petitioners.
*Marvin F. Peterson,* for the respondent.

---

SCOTT, *Judge:* Respondent determined deficiencies in petitioners' income tax for the calendar years 1958, 1959, and 1960 in the amounts of $19,370.03, $27,168.19, and $4,876.81, respectively.

Some of the issues raised by the pleadings have been disposed of by settlement, leaving for our decision whether petitioners' loss from a limited partnership exceeded the amount of $5,079.16 for the year 1959 and whether petitioners sustained any loss from this partnership for the year 1960. The amount of the partnership loss has been agreed to by the parties, and the issue arises because of the provision of section 704(d) of the Internal Revenue Code of 1954 that a partner's distributive share of partnership loss shall be allowed only to the extent of the adjusted basis of such partner's interest in the partnership at the end of the partnership year in which such loss occurred.

All of the facts have been stipulated and are found accordingly. The facts set forth herein will be limited to those necessary to an understanding of the issue.

Petitioners, husband and wife residing in Minneapolis, Minn., filed joint Federal income tax returns for the calendar years 1958, 1959, and 1960 with the district director of internal revenue for the district of Minnesota. Petitioners kept their records and reported their income on the cash receipts and disbursements method, except the income from a general construction business operated as a sole proprietorship which was reported on a completed contract method.

On October 14, 1958, petitioners and Kingbay Properties, Inc., a corporation incorporated as a business corporation under the laws of the State of Minnesota on October 13, 1958, formed a limited partnership under the name of Kingbay Properties Co. (sometimes hereinafter referred to as the Kingbay Co.). The articles of limited partnership of Kingbay Co., filed for record with the Register of Deeds of Hennepin County, Minn., on January 6, 1959, listed Kingbay Properties, Inc., as a general partner and each of petitioners as a limited partner. These articles provided that each partner should contribute to the capital of the partnership cash in the sum of $100. The limited partners were permitted to make additional contributions of cash or property but the articles specifically provided that they might not be required to contribute any such additional cash or property. The articles provided for the sharing of net profits and losses in proportion to the respective contributions of the partners to the capital of the partnership, except that it was provided that the limited partners should at no time become liable for any obligations or losses of the partnership beyond the amount of their respective contributions. The articles provided for the business to be managed by the general partner.

Kingbay Properties, Inc., has a total capitalization in the sum of $1,000 which was paid into the corporation by petitioner Curtis W. Kingbay, and no person other than Curtis W. Kingbay has at any time held any equity in Kingbay Properties, Inc. At all times since the incorporation of Kingbay Properties, Inc., petitioners have served as two of its directors, Curtis W. Kingbay has served as its president, and Laura M. Kingbay as its secretary and treasurer.

On January 14, 1959, petitioners and Kingbay Properties, Inc., executed amended articles of limited partnership of Kingbay Properties Co., which amended articles were filed for record with the Register of Deeds of Hennepin County, Minn., on April 6, 1959. The amended articles named Kingbay Properties, Inc., as general partner and Kingbay Properties, Inc., and petitioners as limited partners. These articles provided for a contribution to the capital of the partnership in cash by Kingbay Properties, Inc., of $100 and by each of petitioners of $2,450. The articles specifically provided that no limited partner would be required to contribute any additional cash or property to the partnership. These articles, like the original, provided for the sharing of profits and losses in proportion to contributions to capital of the partnership by the various partners and limited the liability of the limited partners for any obligations or losses of the partnership to the amount of their respective contributions to the capital of the partnership. Otherwise, the amended articles generally carried the same provisions as the original articles. The articles as amended remained in effect throughout the year 1960 here involved.

Further amendments were made to the articles of limited partnership of Kingbay Co. in 1962, 1963, and 1964, to increase the capital contribution of each of petitioners to the sum of $8,450, $19,450, and $29,950, respectively. These further amendments to the articles of limited partnership did not otherwise change the amended articles of limited partnership filed on April 6, 1959.

The purpose for which the partnership, Kingbay Properties Co., was formed was the construction of apartment buildings for rental purposes. During 1958, 1959, and 1960 the partnership purchased land in Minnesota and constructed the Paul Apartments and the Park Apartments in 1959 and the Thunderbird Apartments and the Olympic Apartments in 1960. Although Kingbay Properties Co. was the purchaser and owner, the land was purchased in the name of Kingbay Properties, Inc., and the mortgage deeds and the notes executed to secure the financing for the purchase of land and construction of the apartment buildings were executed by Kingbay Properties, Inc. No disclosure has been made in the recorded deeds and mortgages or in the mortgage notes that Kingbay Properties Co., the limited partnership, is the owner of these properties. The deeds and mortgages have

remained at all times material hereto in the name of Kingbay Properties, Inc.

During 1958 petitioner Curtis W. Kingbay advanced $32,511.57 to the partnership and on December 31, 1958, received a promissory note payable upon demand in the amount of this advance.

During 1959, petitioner Curtis W. Kingbay made advances to the partnership in the amount of $598,691.21. He received 11 promissory notes payable upon demand from the partnership for the various advances, 1 dated in each month of 1959 except the month of March, the total of such notes being $467,486.93. During 1959 the partnership made repayments on the advances made by Curtis W. Kingbay in the total amount of $259,842.40.

During 1960 petitioner Curtis W. Kingbay made advances to the partnership in the total amount of $412,940.76 and received from the partnership 12 promissory notes payable upon demand for these various advances, 1 such note dated the first day of each month from January through November 1960, and 1 such note dated December 31, 1960, the total amount of the notes so received being $477,672.96. During 1960 the partnership made repayments to Curtis W. Kingbay in the total amount of $690,861.35.

The amounts advanced by Curtis W. Kingbay to the partnership were entered on the partnership's books under "CURRENT LIABILITIES: Notes Payable." Debits and credits were entered on the ledger sheets of Kingbay Properties Co. on various dates during the various months of the years 1959 and 1960 and a balance shown after each entry. The balance due on December 31, 1960, was shown on the ledger sheet as $98,339.29.

As of December 31, 1959, the principal balances due on the mortgage notes outstanding on the Paul Apartments and the Park Apartments totaled $240,134.62, and as of December 31, 1960, the mortgages outstanding on the two above-named apartments and the Olympic and Thunderbird Apartments totaled $832,698.36.

The advances made by Curtis W. Kingbay to the partnership during the years 1958, 1959, and 1960 were shown on the balance sheet in the partnership returns of income for these years filed by the partnership with the district director of internal revenue for the district of Minnesota as notes payable. The partnership kept its records on an accrual basis of accounting and filed its income tax returns on a calendar year basis.

The partnership had net income for the year 1958 in the amount of $182.21 and sustained a net loss for the year 1959 in the amount of $7,461.47, and sustained a net loss in the year 1960 in the amount of $15,031.93.

On their joint income tax returns filed for the years 1959 and 1960

petitioners each claimed 49 percent of the losses sustained by the partnership for the calendar years 1959 and 1960.

Respondent in his notice of deficiency disallowed the losses claimed by petitioners as partners of the limited partnership, except to the extent of $5,079.16 for the year 1959 and disallowed the losses claimed for the year 1960 in their entirety with the explanation as to the year 1959 that the deduction claimed by petitioners as their distributive shares of the loss of the limited partnership was disallowed to the extent that it exceeded $5,079.16, their adjusted bases in the partnership at the end of the partnership year, and with the explanation for the year 1960 that the deduction claimed as petitioners' distributive shares of the loss of the limited partnership was disallowed to the extent it exceeded their adjusted bases in the partnership at the end of the partnership year and since "your adjusted bases in the partnership was reduced to zero by the loss incurred in 1959, none of the loss incurred in this year is allowable."

Section 701 provides that a partnership as such is not subject to income tax but persons carrying on business as partners shall be liable for the tax in their individual capacities, and section 702 provides for each partner including in his income his distributive share of the partnership gains and losses. Section 704 provides that a partner's distributive share of the income, gain, loss, deduction, or credit shall, except as otherwise provided in that section, be determined by the partnership agreement, and subsection (d) of section 704 [1] provides for the limitation on allowance of losses. This subsection provides that a partner's distributive share of the partnership loss shall be allowed only to the extent of the adjusted basis of such partner's interest in the partnership at the end of the partnership year in which such loss occurred. Any excess of such loss over such basis shall be allowed as a deduction at the end of the partnership year in which such excess is repaid to the partnership.

Section 705 [2] provides, insofar as here pertinent, that the adjusted basis of a partner's interest in a partnership shall be the basis de-

---

[1] SEC. 704(d). LIMITATION ON ALLOWANCE OF LOSSES.—A partner's distributive share of partnership loss (including capital loss) shall be allowed only to the extent of the adjusted basis of such partner's interest in the partnership at the end of the partnership year in which such loss occurred. Any excess of such loss over such basis shall be allowed as a deduction at the end of the partnership year in which such excess is repaid to the partnership.

[2] SEC. 705. DETERMINATION OF BASIS OF PARTNER'S INTEREST.

(a) GENERAL RULE.—The adjusted basis of a partner's interest in a partnership shall, except as provided in subsection (b), be the basis of such interest determined under section 722 (relating to contributions to a partnership) or section 742 (relating to transfers of partnership interest)—

(1) increased by the sum of his distributive share for the taxable year and prior taxable years of—

termined under section 722, increased by the sum of his distributive share of income for the taxable year and prior taxable years and decreased, but not below zero, by distributions as provided in section 733 and by the sum of his distributive share of losses of the partnership for the taxable year and prior taxable year. Section 722 [3] provides for the basis of an interest in a partnership acquired by the contribution of property or money.

Section 752 [4] provides that any increase in a partner's share of the liabilities of the partnership shall be considered as a contribution of money by such partner to the partnership and further provides that "a liability to which property is subject shall, to the extent of the fair market value of such property, be considered as a liability of the owner of the property."

Respondent's regulations under section 752 [5] provide in part that

    (A) taxable income of the partnership as determined under section 703(a),

    (B) income of the partnership exempt from tax under this title, and

    (C) the excess of the deductions for depletion over the basis of the property subject to depletion ; and

    (2) decreased (but not below zero) by distributions by the partnership as provided in section 733 and by the sum of his distributive share for the taxable year and prior taxable years of—

    (A) losses of the partnership, and

    (B) expenditures of the partnership not deductible in computing its taxable income and not properly chargeable to capital account.

  (b) ALTERNATIVE RULE.—The Secretary or his delegate shall prescribe by regulations the circumstances under which the adjusted basis of a partner's interest in a partnership may be determined by reference to his proportionate share of the adjusted basis of partnership property upon a termination of the partnership.

[3] SEC. 722. BASIS OF CONTRIBUTING PARTNER'S INTEREST.

  The basis of an interest in a partnership acquired by a contribution of property, including money, to the partnership shall be the amount of such money and the adjusted basis of such property to the contributing partner at the time of the contribution.

[4] SEC. 752. TREATMENT OF CERTAIN LIABILITIES.

  (a) INCREASE IN PARTNER'S LIABILITIES.—Any increase in a partner's share of the liabilities of a partnership, or any increase in a partner's individual liabilities by reason of the assumption by such partner of partnership liabilities, shall be considered as a contribution of money by such partner to the partnership.

  (b) DECREASE IN PARTNER'S LIABILITIES.—Any decrease in a partner's share of the liabilities of a partnership, or any decrease in a partner's individual liabilities by reason of the assumption by the partnership of such individual liabilities, shall be considered as a distribution of money to the partner by the partnership.

  (c) LIABILITY TO WHICH PROPERTY IS SUBJECT.—For purposes of this section, a liability to which property is subject shall, to the extent of the fair market value of such property, be considered as a liability of the owner of the property.

  (d) SALE OR EXCHANGE OF AN INTEREST.—In the case of a sale or exchange of an interest in a partnership, liabilities shall be treated in the same manner as liabilities in connection with the sale or exchange of property not associated with partnerships.

  [5] Sec. 1.752–1(e) [Income Tax Regs.]. *Partner's share of partnership liabilities.* A partner's share of partnership liabilities shall be determined in accordance with his ratio for sharing losses under the partnership agreement. In the case of a limited partnership, a limited partner's share of partnership liabilities shall not exceed the difference between his actual contribution credited to him by the partnership and the total contribution which he is obligated to make under the limited partnership agreement. However, where none of the partners have any personal liability with respect to a partnership liability (as in the case of a mortgage on real estate acquired by the partnership without the assumption by the partnership or any of the partners of any liability on the mortgage), then all partners, including limited partners, shall be considered as sharing such liability under section 752(c) in the same proportion as they share the profits. * * *

in the case of a limited partnership, the limited partner's share of the partnership liabilities shall not exceed the difference between his actual contribution credited to him by the partnership and the total contribution which he is obligated to make under the limited partnership agreement, and further provides that where none of the parties has any personal liability with respect to the partnership liability (as in the case of a mortgage on real estate acquired by the partnership without the assumption by the partnership or any of the partners of any liability on the mortgage), then all partners, including limited partners, shall be considered as sharing such liability in the same proportion as they share the profits.

Under the language of the various statutes, as well as respondent's regulation, which we have set out in some detail, respondent was correct in limiting petitioners' partnership loss in 1959 to the capital paid in by them to the partnership totaling $4,900 plus their distributive portion of the $182.21 income for 1959, making a total of $5,079.16. The record shows that no further contributions to capital were made by petitioners or provided to be made by petitioners until the year 1962.

Petitioners, however, contend that their bases should be increased under section 752 because of increases in their share of the liabilities of the partnership and also that the loans made by Curtis W. Kingbay to the partnership should be considered to be in substance and reality contributions to capital. In arguing that their bases in the partnership should be increased by a share of the partnership liabilities, petitioners state that they do not deny that the partnership was "in fact organized under the Uniform Partnership Act and that their individual liability for the debts of the partnership is limited to the amount of their agreed capital contribution as set forth in the articles of limited partnership."

They contend, however, that Kingbay Properties, Inc., should be considered as a dummy partner since it had only $1,000 of capital investment and was wholly owned by one of petitioners. Petitioners' contention is that even though in form Kingbay Properties, Inc., the general partner, is personally liable on the mortgages on the properties owned by the partnership but standing in the name of the corporation, in substance no partner of the partnership is personally liable for the mortgage debt of the partnership. Petitioners cite no case authority for their contention and under the facts here present we do not consider that the form in which the transactions were set up should be ignored. Kingbay Properties, Inc., was a corporation incorporated for business purposes. Petitioners' contention amounts to disregarding the corporation as an entity separate from Curtis W.

Kingbay. Only in unusual circumstances will a corporate entity be disregarded, particularly when it is the person who formed the corporation for a legitimate business purpose who seeks to have the corporate entity overlooked.

The record here is not sufficiently complete to show all business purposes that Kingbay Properties, Inc., might have served but an obvious purpose is that the liability of its stockholders is limited whereas had they entered the same transaction as individuals they would have been personally liable to the full extent of the indebtedness incurred. Suffice it to say, that petitioners have shown no reason why the form used in setting up the partnership should not be recognized. The form is also substantive in that it affords protection to petitioners by limiting their liability for partnership debts. Under these circumstances we agree with respondent that the form of the partnership should not be ignored in determining the amount of petitioners' deductions for partnership losses.

The next argument that petitioners make is that the advances made by Curtis W. Kingbay to the partnership should be considered as contributions by that petitioner to the capital of the partnership. Petitioners rely on *Joseph W. Hambuechen*, 43 T.C. 90 (1964), for the proposition that advances made by a limited partner to his partnership may be considered as capital contributions and not losses. That case holds that where the facts show that advances made were in reality capital contributions to the partnership and not loans, such advances will be treated as capital contributions. In so holding, we set forth the numerous criteria for determining the question of whether a particular transaction creates a debtor-creditor relationship. We pointed out, citing *George A. Butler*, 36 T.C. 1097, 1106 (1961), and other cases, that a partner can lend money to his partnership. We also pointed out that whether a particular transaction creates a valid debtor-creditor relationship or is in reality a contribution to capital is a question of fact to be determined from all the surrounding circumstances with the burden of proof on the taxpayer. Such factors as the adequacy of the capitalization of the debtor, the issuance of notes, provision for and payment of interest, presence or absence of a maturity date, intention to repay, whether the debt is subordinated to claims of outside creditors, presence or absence of security for the loan, reasonableness of expectation of repayment, use to which the funds were put, are among those to be considered in making the determination.

In the instant case repayments of the advances were regularly made and notes were given. There is no showing that the indebtedness was subordinate to any other debt. In this completely stipulated case there is nothing to indicate that the advances were other than loans with the

exception of whatever inference might be drawn from the small amount of capital paid into the partnership by the partners. Since the partnership was in the business of constructing rental apartments and thus able to obtain most, if not all, of its necessary capital through mortgage loans, its low capitalization is of little significance when compared to such factors as the giving of notes for the advances and the prompt repayment of the advances.

On the basis of the evidence here present, we conclude that the advances by petitioners to the partnership were as shown by the partnership records and the notes given, loans to the partnership. Certainly, petitioners have not carried the burden of establishing to the contrary. It follows from this conclusion that respondent's limitation of the amount of partnership loss which petitioners were entitled to deduct in 1959 and disallowance of the deduction of the partnership loss claimed by petitioners in 1960 was correct under the provisions of section 704(d).

We, therefore, sustain respondent on the only issue presented to us for decision. It is not clear whether certain of the items agreed to by the parties will require any change in the deficiency as determined by respondent. For this reason, our—

*Decision will be entered under Rule 50.*